**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DOGA CANCA | : | |
| | : | |
| Plaintiff, | : | |
| | : | No.: 19-12318 |
| v. | : | |
| | : | |
| AMAZON.COM, INC. | : | |
| and | : | |
| AMAZON.COM. DEDC, LLC. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO TRANSFER VENUE/**
**PARTIAL MOTION TO DISMISS**

Plaintiff, by and through her undersigned counsel, hereby submits the instant Response Brief to Defendants' Motion to Transfer Venue/Partial Motion to Dismiss. Plaintiff submits *herein* that venue in this matter is proper in both New Jersey and the Eastern District of New York; therefore, if this Court is inclined to transfer venue, Plaintiff does not oppose same. Plaintiff respectfully submits that Defendants' remaining arguments either be denied as moot (pertaining to jurisdiction) or deferred to the transferee Court, as outlined further *herein.*

Plaintiff, however, addresses all arguments contained within Defendants' briefing in the event this Court does not defer ruling on same to the transferee court.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*

Christine E. Burke, Esq.
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
Attorneys for Plaintiff

Date: September 3, 2019

## **TABLE OF CONTENTS**

I.     INTRODUCTION/PROCEDRUAL BACKGROUND………………………….…..1

II.    FACTUAL BACKGROUND……………………………………………………..5

III.   LEGAL ARGUMENT............................................ …………….…………….…….10

     A.) Transfer of Venue to the Eastern District of New York…………..……….......10

     B.) This Court has Personal Jurisdiction over Defendants………………………..…17

     C.) Defendants' 12(b)(6) Motion to Dismiss……………………………….…….…..21

IV.   CONCLUSION ………………….…………………………………………..…..37

## **TABLE OF AUTHORITIES**

**Cases**

*Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981)……………………………………..……………………………………………...…34

*American Cyanamid. Co. v. Hammond Lead Prods., Inc.*, 495 F.2d 1183, 1184 (3d Cir. 1974)……………………………………………………………...……………………...…11

*Annett v. Univ. of Kan.,* 371 F.3d 1233, 1240 (10th Cir.2004)…………………………………..29

*Armbruster v. Unisys Corp.*, 32 F.3d 768, 778-79, 782 (3d Cir. 1994)………………………….33

*Baptiste v. Tapestry, Inc.*, 2018 U.S. Dist. LEXIS 134467, 2018 WL 3772678 (D.N.J. 2018)……………………………………………………………………...………………14

*Barbosa v. Continuum Health Partners Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010)……………………………………………………………..………………………24

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)……………………………….………..23

*Blakey v. Continental Airlines*, Inc., 164 N.J. 38, 65, 751 A.2d 538 (2000) ………...………….34

*Brunner v. AlliedSignal, Inc.*, 198 F.R.D. 612, 613-14 (D.N.J. 2001)………………..……….35

*Burke v. Quartey*, 969 F. Supp. 921, 929 (D.N.J. 1997)……………………………………..…15

*Butler v. IntraCare Hosp. North,* No. H-05-2854, 2006 WL 2868942, at *5 (S.D. Tex. 2006)………………………………………………………………………………...…27

*Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 426 (D.N.J. 2000)……………………………………………………………..11,12, 13, 16

*Carteret Sav. Bank, F.A. v. Shushan,* 954 F.2d 141, 146 (3d Cir.1992). ……………………………………………………………..…17

*Chisolm v. McManimon*, 275 F.3d 315, 324-25 n.9 (3d Cir.2001)…………………………….32

*Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004)……………………………………………………………………………..…25

*Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)…………………………………………………………………………..11

*CLP Packaging Sols. v. Sports Pouch Bev. Co.*, Civil Action No. 07-1532 (SDW), 2008 U.S. Dist. LEXIS 39868, at *13 (D.N.J. May 15,

2008)………………………………………………………….....…………………….4, 22

*D'Agostino v. Johnson & Johnson, Inc*., 133 N.J. 516, 539, 628 A.2d 305 (1993)……………34

*Database America, Inc. v. Bellsouth Advertising & Publishing Co.*, 825 F. Supp. 1216, 1224 (D.N.J. 1993)……………………………………………………………………….……11

*Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998)………………………………..32

*Dorsey v. American Golf Corp.*, 98 F. Supp. 2d 812, 816 (E.D. Mich. 2000) ………………………………………………………………………….……13

*Ensslin v. Twp. Of N. Bergen*, 275 N.J. Super. 352, 364, 646 A.2d 452 (App.Div.1994)…………………………………………………………………….……32

*Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 509 (3d Cir. 2009)…………………………27, 28

*Eubanks v. Filipovich, Civ*. Action No. 12-4299, 2012 U.S. Dist. LEXIS 182448, 2012 WL 6731123, at \*2 (E.D. Pa. Dec. 27, 2012)……………………………………………………18

*Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005)…………………………………………….……29

*Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)…………………..……………….32

*Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 U.S. Dist. LEXIS 87645, Copy. L. Rep. (CCH) P29,656, 2008 WL 4755350 (D.N.J. 2008)…………………………………..…….14

*Guirguis v. Movers Specialty Servs.*, 346 F. App'x 774, 776 n.6 (3d Cir. 2009)…………………………………………………………………….……24

*Gwynn v. Transcor America, Inc.*, 26 F. Supp. 2d 1256, 1261-62 (D. Colo. 1998)………………………………………………………………………………..13

*Hilborn v. Cordaro,* 2007 WL 2903453 (M.D.Pa. Sept. 28, 2007)………………………………27

*Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir. 1998)……………………………………...……………………………………………...25

*Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289-91, 933 N.E.2d 744, 907 N.Y.S.2d 145 (2010) …………………………………………………..………………...36

*Huggard v. Crown Bank*, 2012 U.S. Dist. LEXIS 20501 \*11 (D.N.J. Feb. 17, 2012)…………………………………………………………………………..24

*Jarzynka v. St. Thomas Univ. Sch. of Law*, 323 F.Supp.2d 660, 663-64 (W.D. Pa. 2004)…………………………………………………………………….……..19

*J.F. Lomma, Inc. v. Stevenson Crane Servs*., Civil Action No. 10-3496 (SDW), 2011 U.S. Dist. LEXIS 10998, at *16 (D.N.J. Feb. 3, 2011) ……………………………………………………………………...…4, 22

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995)…………………………..14, 17

*Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997)…………………………30

*King v. Rumsfeld, 328 F.3d 145* (4th Cir. 2003)………………………………………………..….29

*Kisko v. Penn Central Transp. Co.*, 408 F. Supp. 984, 986 (M.D.Pa. 1976)……………………15

*Knierim v. Siemens Corp*., Civil Action No. 06-4935 (SDW), 2008 U.S. Dist. LEXIS 26571, at *66 (D.N.J. Mar. 31, 2008) ……………………………………………………..………………4, 22

*Koerner v. State*, 62 N.Y.2d 442, 444, 478 N.Y.S.2d 584, 585, 467 N.E.2d 232, 233 (1984)……………………………….......................................................................................3

*Lehmann v. Toys "R" Us, Inc.,* 132 N.J. 587, 600, 626 A.2d 445 (1993)………………………………………………………………………..……………34

*Lynch v. Nat'l Prescription Adm'rs*, 03 Civ. 1303, 2004 U.S. Dist. LEXIS 3134, 2004 WL 385156, at *3 (S.D.N.Y. Mar. 1, 2004) ………………………………………………………………………16

*Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990)…………………….……………..33

*Marinac v. Mondelez Int'l, Inc*., No. 2:14-7606, 2019 U.S. Dist. LEXIS 117743, at *6 (D.N.J. July 12, 2019)……………………………………………………………………….…………………...36

*Matthews v. New Jersey Inst. Of Tech*., 772 F. Supp. 2d 647, 657 (D.N.J. 2011)……………………………………………………………………………..……25

*McDonnellv . State of Ill.*, 319 N.J. Super. at 340-41, 725 A.2d 126 (App. Div. 1999) ……………………………………………………………………..…35

*McKenna v. Pacific Rail Serv*., 32 F.3d 820, 840 (3d Cir. 1994)……………………….…...……34

*Mellon Bank (East) P.S.F.S. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)………………………………………………………………………………17

*ML Design Grp., LLC v. Young Mfg. Co*., Civil Action No. 12-5883 (MAS), 2013 U.S. Dist. LEXIS 84393 (D.N.J. June 17, 2013)……………………………………………..…………3,21

*Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725, 19 V.I. 642 (3d Cir. 1981)………………………14

*Nesselrotte v. Allegheny Energy, Inc.*, WL 703395 (W.D. Pa. 2009)……………………………....29

*Norenius v. Multaler*, Inc., 2008 N.J. Super. Unpub. LEXIS 2923 (App. Div. 2008) ………….34

*Noxon Chem. Prods. Co. v. Leckie*, 39 F.2d 318 (3d Cir. 1930)……………………………………………………………..……17

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)………………………………………………………....…….18, 19

*Oubre v. Clinical Supplies Mgmt., Inc.*, 05 Civ. 2062, 2005 U.S. Dist. LEXIS 28877, 2005 WL 3077654, at *3 (S.D.N.Y. Nov. 17, 2005)……………………………………………………16

*Parker v. Hahnemann Univ. Hosp.*, 234 F.Supp.2d 478, 484 (D.N.J. 2002)………………………………………………………..………………..25, 26

*Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)………………….…………….22

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)…………………….…………..18,22

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973)………………………………………………………………………..15

*Reckitt Benckiser Pharm., Inc. v. BioDelivery Scis. Int'l, Inc.*, Civil Action No. 14-5892 (MAS), 2015 U.S. Dist. LEXIS 94891, at *2 (D.N.J. July 20, 2015)…………………………………….3, 22

*Reitnour v. Cochran*, 86-4869, 1987 U.S. Dist. LEXIS 3098, 1987 WL 9774, at *1 n.1 (E.D. Pa. 1987)……………………………………………………………………………..…..14

*Richard v. Cingular Wireless LLC,* 233 Fed.Appx. 334, 338 (5th Cir.2007)………………………………………………………………………29

*Robinson v. S.E. Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993)………………….…………..29

*Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012)……………………….……36

*Rosado v. TAM Lending Ctr., Inc.*, No. 18-13430 (RBK/AMD), 2019 U.S. Dist. LEXIS 46906, at *19 (D.N.J. Mar. 21, 2019)……………………………………………………………….4, 22

*Satz v. Taipina* 2003 U.S. Dist. LEXIS 27237 (D.N.J. Apr. 15, 2003), aff'd, 122 Fed. Appx. 598 (3d Cir. N.J. 2005)……………………………………………………………...……………..35

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)………………………………………………………………………….…33

*Schneider v. Sumitomo Corp. of Am.*, Civil Action No. 09-5094 (DMC) (MF), 2010 U.S. Dist.

LEXIS 59101, at *12 (D.N.J. June 14, 2010)…………………………………………………35

*Shtab v. Greate Bay Hotel & Casino, Inc.,* 173 F.Supp.2d 255, 268 (D.N.J.2001)…………………………………………………………………...……27

*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S. Ct. 871, 27 L. Ed. 2d 808 (1971). ……………………………………………………….....…15

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)……………………………………………………………………………….…24

*Tanzymore v. Bethlehem Steel Corp*., 457 F.2d 1320 (3d Cir. 1972)………………………………………………………………………………..17

*The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 18, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)………………………………………………………………………………20

*Torre v. Casio, Inc*., 42 F.3d 825, 829 (3d Cir. 1994)…………………………………………...33

*Trujillo-Cummings v. Public Serv. Co.,* 173 F.3d 864 (10th Cir. 1999)………………………………………………………………………………28

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co*., 75 F.3d 147, 151 (3d Cir. 1996)………………………………………………………………………………18

*Victor v. State*, 203 N.J. 383, 406, 4 A.3d 126 (2010)…………………………..………………32

*Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 (3d Cir. 2016)…………………….………………29

*Williams v. Shenango, Inc.,* 986 F.Supp. 309, 313 (W.D.Pa.1997)……………………………..27

*Woodson v. Scott Paper Co.,* 109 F.3d 913, 920-921 (3d Cir.1997)…………………………....30

*World—Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)………………………………………………………………………..…...18

*Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y.2005)……………...…….29

*Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987)…………………………..……………29

**Statues**

28 U.S.C. § 1391(b) …………………………………………………..………………10

28 U.S.C. 1404(a)………………………………………………………….………………14

29 C.F.R. § 825.220(b)………………………………..…………………………………..27

29 U.S.C. 2612(a)(1)……………………………………………………………………..25

29 U.S.C. 2614(a)(1)……………………………………………..…………………….25

29 U.S.C. § 2615(a)(1)……………………………………...………..25, 27

**Rules**

Fed. R. Civ. P. 8(a)(2)……………………………………………………………...…23

**Other Authorities**

Judicial Improvements Act of 1990, Pub. L. 101-650, Title III, § 311, 104 Stat. 5114……………………………………………………………………………………11

I.      **INTRODUCTION/PROCEDURAL BACKGROUND**

On May 5, 2019, Plaintiff Doga Canca (*hereinafter* "Plaintiff" or "Ms. Canca") filed a Complaint against her prior employers, Amazon.Com, Inc. and Amazon.com. dedc, LLC. (*hereinafter* "Defendants") asserting violations of the Family and Medical Leave Act ("FMLA"), and the New Jersey Law Against Discrimination ("LAD"). Dkt. No.: 1.  On August 1, 2019, Ms. Canca filed her First Amended Complaint in order to add her mirroring claims under the Americans with Disabilities Act ("ADA"). Dkt. No.: 14; *and see* Plaintiff's First Amended Complaint attached hereto as "Exhibit A."  Defendants filed an Answer to the Amended Complaint on August 15, 2019.  Dkt. No.: 17. On the same day, Defendants also filed the current Motion to Transfer Venue/Motion to Dismiss. Dkt. No.:18.

*First,* Defendants' contention that this New Jersey federal court lacks personal jurisdiction over a multinational technology company – who has substantial business operations and warehouses throughout the state of New Jersey (including Robbinsville, NJ -- where Plaintiff was hired and predominantly worked during her tenure with this company) is bellied by the Complaint and uncontroverted facts.  In fact, where apparently convenient for it, this same Defendant has recently consented to and affirmatively sought jurisdiction before this Court in the matters of *Vaccaro v. Amazon.com DEDC, LLC*, Civil Action No. 18-11852(FLW), 2019 U.S. Dist. LEXIS 40193 (D.N.J. Mar. 13, 2019)(where Amazon also employed a warehouse worker at its Robbinsville, NJ facility – and was granted removal to this Court for claims presented under New Jersey's wage and hour laws) and *Ross v. Amazon.com Inc*, Civil Action No.:19-1864 (SDW)(where Amazon filed a notice of removal to this federal court in a LAD suit for another one of its Robbinsville, New Jersey employees, at Dkt. No.: 1). Yet, somehow in this suit where Ms. Canca was also hired to work at their New Jersey facility and spent the majority of her employment there, these Amazon Defendants now disclaim a basis for jurisdiction.  Despite generalized arguments by Amazon in this regard, this Court has clear

1

specific jurisdiction over this matter, discussed *infra*.

*Second*, for the same reason jurisdiction is proper here, venue is as well.  While Defendants ignore nearly ½ the allegations in the Complaint pertaining to New Jersey and strategically focus solely on Ms. Canca's very narrow time spent at their one New York facility – Ms. Canca was hired to work at Defendants' Robbinsville, NJ facility, spent the *majority* of her employment working in Robbinsville, New Jersey, took FMLA leave while working in New Jersey, returned from her medical leave in New Jersey, her performance in New Jersey under New Jersey management will be directly at issue during litigation, and she most recently interviewed with a full team of Robbinsville, New Jersey managers where she sought and was awaiting transfer/hire back to Amazon's New Jersey location – but was ultimately terminated.  New Jersey has a substantial connection to Ms. Canca's claims, and venue is proper here.  However, Ms. Canca concedes that venue is *also* proper in the Eastern District of New York as certain material incidents giving rise to her claims occurred while she worked in Staten Island, New York, and under New York management.

*Third*, as to transfer – Ms. Canca is 8.6 miles from this District Court in Trenton, her supporting witnesses worked at/still work at the Robbinsville, New Jersey facility, and her treating medical doctors – who are materials witnesses in this disability discrimination/FMLA case – are within less than 15 minutes from this New Jersey District Court.  **However, given that venue is appropriate in _both_ New Jersey and New York, as material events at issue in this case surrounding the termination occurred in New York, and a predominant number of Defendants' witnesses are located in New York, Plaintiff does not oppose Defendants' request to transfer venue if this Court is so inclined**.  Under 28 U.S.C. § 1406, a court must dismiss a case laying venue in the wrong district, or, if the interest of justice so requires, transfer the case to another judicial district. Even if venue is proper, a court may transfer the case "for the convenience of the parties [and] in the interest

of justice." 28 U.S.C. § 1406. A review of the Complaint and the Defendants' Motion reveals that venue would also be proper in the Eastern District of New York and may be more convenient for the large majority of Amazon's current employees who will be called to depositions and to testify at trial in this matter.

*Fourth*, and finally, if this Court is inclined to transfer venue to the Eastern District of New York, Ms. Canca respectfully submits that this Court defer ruling on the remaining arguments raised within Defendants' Motion under 12(b)(6).  In addition to her present claims for violations of the LAD (and federal law, including the ADA & FMLA), Ms. Canca intends to amend her instant lawsuit to include claims under the New York State Human Rights Law (N.Y. Executive Law §§291, 296-a ), and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York (as to her termination) and maintain claims under the LAD (as to her failure to be hired at the Robbinsville NJ facility).[1]   If this matter is transferred, the decision respecting choice of law application, including between the LAD and New York Human Rights Laws is more properly before the District Court overseeing the case and making all legal rulings respecting the matter going forward. It is routine practice for District Courts in New Jersey to defer ruling on substantive issues to the transferee Court.[2]

---

[1] In filing the instant Complaint, Ms. Canca could not have anticipated Defendants' argument that the New York Human Rights Law (vs. the LAD) governed her termination claims.  Given the infancy stages of litigation, and that Ms. Canca is well within the time frame for adding counts for violations of New York State and City Human Rights laws (similarly prohibiting disability discrimination/retaliation), she intends to amend her Complaint (either in this forum or once transferred to the Eastern District of New York).   The statute of limitations for commencing an action pursuant to Executive Law § 296 is ordinarily three years, CPLR 214(2); *Koerner v. State*, 62 N.Y.2d 442, 444, 478 N.Y.S.2d 584, 585, 467 N.E.2d 232, 233 (1984).

[2] *ML Design Grp., LLC v. Young Mfg. Co*., Civil Action No. 12-5883 (MAS), 2013 U.S. Dist. LEXIS 84393, at *1-2 n.2 (D.N.J. June 17, 2013)(granting Motion to Transfer Venue, "Defendants' contentions regarding this Court's lack of personal jurisdiction over Mr. Young, as well as the substantive portion of the motion to dismiss based upon Rule 12(b)(6), need not be resolved. Defendants are instructed to file appropriate motions upon transfer of this case to the Western District of Kentucky."); *Reckitt Benckiser Pharm., Inc. v. BioDelivery Scis. Int'l, Inc.*, Civil Action No. 14-5892 (MAS), 2015 U.S. Dist. LEXIS 94891, at *2 (D.N.J. July 20, 2015)("Because the Court has granted the motion to transfer, it declines to consider Defendants' motion to dismiss"); *J.F. Lomma, Inc. v. Stevenson Crane Servs.*, Civil Action No. 10-3496 (SDW), 2011 U.S. Dist. LEXIS 10998, at *16 (D.N.J. Feb. 3, 2011)(in light of the Court's decision

As discussed *infra,* (and if this Court is intent on addressing Defendants' remaining arguments notwithstanding transfer), Ms. Canca states more than sufficient factual allegations to sustain her disability discrimination/retaliation claims under the LAD, ADA and FMLA, and for her FMLA interference claim. Given that Defendants do not address all of Plaintiff's claims in their 12(b)(6) portion, including the FMLA interference claim, this should be treated as a *partial* motion to dismiss.

Defendants argue the instant Motion as if it were at the summary judgment stage and would impose a heightened pleading requirement on a plaintiff which simply does not exist. Ms. Canca does not merely allege she engaged in protected activity, and was terminated. In addition to the unusually close temporal proximity (which alone can satisfy the light burden associated with establishing a *prima facie* case), Ms. Canca also presents <u>direct evidence</u> of discriminatory/retaliatory comments from management, evidence of significant hostility pertaining to her requests for accommodations and overwhelming evidence of pretext – as the notion that she was falsifying time records is patently false, and was literally a farce created by Amazon's management team contemporaneous with her need for medical accommodations related to her heart conditions. Therefore, any Motion to Dismiss pursuant to 12(b)(6) should be denied.

---

to transfer, the Court declines to address the merits of Stevenson's motion to dismiss for lack of personal jurisdiction); *Knierim v. Siemens Corp.*, Civil Action No. 06-4935 (SDW), 2008 U.S. Dist. LEXIS 26571, at *66 (D.N.J. Mar. 31, 2008)(as the Court will transfer plaintiffs' claims pursuant to 28 U.S.C. § 1404(a), the Court declines to address defendants' alternative argument that plaintiffs' claim for breach of implied covenant of good faith and fair dealing be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6)); *Rosado v. TAM Lending Ctr., Inc.*, No. 18-13430 (RBK/AMD), 2019 U.S. Dist. LEXIS 46906, at *19 (D.N.J. Mar. 21, 2019)(Defendants' motion to transfer venue is granted, and this case shall be transferred under 28 U.S.C. § 1404(a); and having transferred this matter, the Court declines to address the parties' arguments on whether to strike Plaintiff's jury demand, an issue that the transferee court should decid); *CLP Packaging Sols. v. Sports Pouch Bev. Co.*, Civil Action No. 07-1532 (SDW), 2008 U.S. Dist. LEXIS 39868, at *13 (D.N.J. May 15, 2008)(in light of the Court's decision to transfer, the Court declines to address the merits of the parties remaining arguments).

## I.  FACTUAL BACKGROUND

Ms. Canca is a Pennsylvania resident, who resides 8.6 miles from this District Court.[3] Ms. Canca worked for Defendants at 50 New Canton Way, Robbinsville, NJ 08691 (the "Robbinsville location"). Ex. A at ¶ 14.   Amazon operates its businesses at "fulfillment centers" which have acronyms assigned to them for identification purposes. Ex. B, at ¶ 5. The Robbinsville facility was named "EWR4." *Id.*

Ms. Canca was hired by Defendants as a temporary associate beginning October 3, 2016 (commencing employment as a full-time regular employee on January 25, 2017); in total, Ms. Canca was employed with Defendants for in excess of 2 years. *Id.* at ¶ 13; Exhibit B, at ¶¶ 2-6. Ms. Canca spent more than fifty-percent (50%) of her employment tenure with Defendants working in New Jersey at EWR4 (from October 3, 2016 through September 27, 2018). Ex. A, at ¶ 14;  Ex. B, at ¶¶ 4-6, 14.

After having worked for Defendants at their Robbinsville, NJ location for her first approximate 20 months of her emploment, she was transferred to Defendants' fulfillment (and distribution) center at 546 Gulf Avenue, Staten Island, NY 10314 (the "Staten Island location") – also referred to as "JFK8." Ex. A, at ¶ 15; Ex B, at ¶ 13. The Staten Island location was an approximate 100 million dollar, 855,000 square-foot distribution center opened by Defendant Inc. in mid-2018. Ex A. at ¶ 16. The transfer to the Staten Island location was premised upon a promotion Ms. Canca received to the title of General Manager Assistant ("GMA").  Ex. A, at ¶ 17.

---

[3] *See* mapquest.com distance between 402 E. State Street, Trenton, NJ and Plaintiff's home address (11 Tweed Rd., Levittown, PA 19056)(Ex. A), available at: *https*://www.mapquest.com/directions/from/us/new-jersey/trenton/08608-1500/402-e-state-st-40.221448,-74.757411/to/us/pa/levittown/19056-1521/11-tweed-rd-40.173494,-74.878883   last visited August 26, 2019.

Although Ms. Canca's transfer was effective July 29, 2018, Ms. Canca was on an approved medical leave of absence from August 22, 2018 through her return to work on Monday, September 10, 2018. Ex. B, at ¶¶ 10-11. Ms. Doga underwent her required heart surgery at UPenn Hospital on August 23, 2018.  Ex. B, at ¶ 8.  Ms. Doga's medical leave was designated as leave under the FMLA.  Ex., B, at ¶ 10.

Ms. Canca <u>returned from her FMLA-qualifying medical leave of absence to the Robbinsville facility</u> on September 10, 2018, continued working at EWR4 through September 12, 2018, and physically worked at Defendants' Edison, New Jersey location for a conference on September 13 and 14, 2018.  *See* Ex. B, at ¶¶ 11-12.  This was because the Staten Island facility was not set to "launch" until mid-September 2018. *Id.* at ¶ 13.  Ms. Canca did not finally move to the Staten Island location until September 27, 2018.  *Id.*

Ms. Canca worked at the Staten Island location five (5) months (from September 27, 2018 through March 5, 2019) before being terminated (and <u>in the midst of transferring and being hired to work back in New Jersey</u>, as discussed *infra*).  Ex. B, at ¶¶ 14, 17.

For the limited period of time Ms. Canca worked at the Staten Island location, her immediate supervisor was Anand Mehta (an approximate 8.5-year employee of Defendants), a current Director of Operations (and prior General Manager). Ex. A, at ¶ 20.  Mehta directly supervised Ms. Canca from her effective promotion (July 2018) through February 2019 (when Colvin became her manager).  *Id.* Chris Colvin ("Colvin"), a prior Assistant General Manager (and General Manager as of February 2019), is an approximate 5-year employee of Defendants working in various positions (and locations) for Defendants (primarily in senior management) throughout the Greater New York City area.  *Id.* at ¶ 21.

While in the employ of Defendants, Ms. Canca had and continues to suffer from various health problems. These health problems include Premature Ventricular Contractions (a/k/a "PVC"), among other heart-related complications and cardiovascular problems. *Id.* at ¶ 23. This is a permanent, serious disability (as to the collective complications). *Id.* Ms. Canca has received ongoing treatment, surgery, and has life-long accommodation needs. *Id.* Additionally, Ms. Canca has also suffered from a mini-stroke. *Id.* Notwithstanding the foregoing health conditions, she was always able to perform the essential functions of her job(s) with Defendants. *Id.*

As stated, in August of 2018, Ms. Canca required a surgical heart procedure. Ex. B, at ¶¶ 8-10. This necessitated her request for a leave of absence, which was FMLA-qualifying and designated as leave under the FMLA. *Id.* Between August 2018 through her ultimate termination from employment in March of 2019, Ms. Canca sought and used various medical accommodations such as: (1) intermittent time off from work for medical reasons; (2) breaks as needed; and (3) outlining her lifting restrictions of over 40 lbs to Defendants' management. Ex. A, at ¶ 24. Ms. Canca had also discussed other issues with Defendants' management such as travel to and from work (1 reason for her later transfer request back to New Jersey). *Id.*

Overall, Defendants' management was antagonistic about Ms. Canca's health and expressed medical needs. *Id.* at ¶ 25. Her management (primarily Colvin) was unsympathetic when she discussed her health, was dismissive, and Defendants' Human Resources personnel was blatantly discriminatory. *Id.* In particular, Derrik Atkinson (Sr. Human Resources Manager), an approximate 3-year employee of Defendants, expressed he did not think Ms. Canca would be able to perform her job in light of her health conditions (in a discussion about scheduling). *Id.*

In early February 2019, Ms. Canca requested a transfer (and return) to the Robbinsville location (in New Jersey). *Id.* at ¶ 26. As part of the transfer process, Ms. Canca sought several

different potential roles and was willing to work in many different capacities as many types of jobs frequently open up in Defendants' distribution centers on a continual basis. *Id.*

As part of the process to transfer back to New Jersey in February of 2019, Ms. Canca interviewed with Robbinsville management. *See* Ex. B at ¶ 16. Ms. Canca was then approved for hire and/or transfer to Defendants' Robbinsville, NJ location. Exhibit A, at ¶ 27. Transferring employees such as Ms. Canca are placed on an internal priority list whereby they are given the first open favorable (and applicable) position (of which there were several). *Id.* And in particular, Ms. Canca expected to work as an Area Manager or in another supervisory capacity, as eligible and needed. *Id.*

Ms. Canca communicated with her management at the Staten Island location that the transfer request was for several reasons. *Id.* at ¶ 28. But among those reasons, Ms. Canca identified that her physicians were closer in New Jersey, medical appointments were easier to schedule and attend closer to her doctors, the distance of Staten Island was exacerbating some of her health issues, and it would medically benefit her to return to New Jersey. *Id.*

Shortly after being approved for her transfer to the Robbinsville location (also a form of accommodation), Ms. Canca was terminated on or about March 5, 2019 for completely fabricated and pretextual business misconduct-related claims. *Id.* at ¶ 29. The rationale given to Ms. Canca for her termination was that she sought compensation outside of normal business hours – or in other words – performed work for Defendants *before or after work or over a weekend*. *Id.* at ¶ 31.

Ms. Canca was paid hourly – and freely acknowledges she submitted time worked during and outside of her regularly scheduled work shifts (although it was very insignificant). *Id.* at ¶ 32. Part of Ms. Canca's job duties **required** her to shop for food, pastries, decorations, balloons, and other products for parties, events, meetings, and other occasions. *Id.*

8

There are at least **8** separate reasons why Ms. Canca's termination was for objectively false, made-up and pretextual reasons as follows:

(1) Management who were aware of Ms. Canca's health conditions, requested accommodations, and concerns of mistreatment were involved in her termination. Atkinson, a Senior HR Manager had previously referenced mS. Canca's medical conditions as a "barrier" to her work, and HR was involved in her termination.

(2) Ms. Canca had been an otherwise stellar employee for years without prior progressive discipline or warning for any such related or unrelated alleged misconduct;

(3) Ms. Canca was well received by New Jersey management who was welcoming the opportunity to have her as a supervisory figure back in Robbinsville because of her organization, skills, and work ethic (if not terminated);

(4) Ms. Canca was terminated for identifying **some** minimal work hours outside of normally scheduled hours which was exceedingly *de minimis* and comprised very few hours over many months of time;

(5) Ms. Canca had submitted time logs of hours worked in the same manner prior to extensive discussions of her health or accommodation needs, and she was **never once** informed of any purported concerns;

(6) Had Ms. Canca ever once been warned not to submit any further time for or work outside of regular business hours, she would not have done so. Yet, all of her time had been **approved** by Defendants' *own* management;

(7) Ms. Canca was terminated for identifying some sporadic shopping hours in various months when directed to assist with events, but she possesses texts and other materials demonstrating while doing the very shopping **she was communicating with Defendants' own management and human resources personnel (*who were even making requests of her*)**; and

(8) Everyone knew Ms. Canca performed miscellaneous shopping on an infrequent basis when asked to assist with events because Defendants' own loss prevention personnel (in charge of ensuring no theft or improper off-the-clock work) assisted with carrying such materials into work from Ms. Canca's vehicle (demonstrated in photos, separate and apart from texts and e-mails showing supervisory staff knew Ms. Canca had to occasionally shop for events outside of work hours).

*Id.* at ¶ 33.  No possible factfinder (judge or jury) would ever believe there was a plausible or legitimate reason for her termination.  As a direct, actual and proximate cause of Ms. Canca's termination, her offer of hire and/or transfer to New Jersey (at the Robbinsville location) became unavailable.  *Id.* at ¶ 34.

## III.  LEGAL ANALYSIS

### A.  Legal Standard Respecting Transfer of Venue[4]

28 U.S.C. § 1391(b) states that "[a] civil action may be brought in

(1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C.S. § 1391(b). Ms. Canca properly filed suit in this District Court pursuant to 28 U.S.C. § 1931(b)(2) as a substantial part of the events giving rise to her claims occurred in New Jersey (including her hire and employment at Amazon's Robbinsville, NJ location, taking of FMLA-protected leave at the Robbinsville, New Jersey location, and attempts to be hired at the Robbinsville NJ location).  Defendants' briefing continually references what it deems to be "all relevant times" in the lawsuit.   However, Defendants contentions that the most "relevant" events (more proper term being "substantial" under a venue analysis) occurred in New York does not negate that substantial events at issue in this case also occurred in New Jersey.

---

[4] Ms. Canca addresses Defendants' contentions regarding proper venue and its request to transfer first. Given Ms. Canca does not intend to oppose transfer to the Eastern District of New York (as same is *also* a proper venue for this action), if Defendants' request is granted, the remaining issues within Defendants' Motion should be reserved for ruling by the transferee court (and some are mooted entirely).

The 1990 amendments to 28 U.S.C. § 1391 revised subsections (a)(2) and (b)(2), the venue provision for cases based on a federal question, to provide that venue was proper in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." Judicial Improvements Act of 1990, Pub. L. 101-650, Title III, § 311, 104 Stat. 5114. This language replaced the previous wording of (a)(2) and (b)(2), which had provided that venue was appropriate in a judicial district "in which the claim arose." *See American Cyanamid. Co. v. Hammond Lead Prods., Inc.*, 495 F.2d 1183, 1184 (3d Cir. 1974)(quoting pre-amendment language). The amendment had the effect of establishing that venue in both diversity and federal-question cases could be proper in more than one district, provided that a "substantial part" of the events occurred in more than one district. *See Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Database America, Inc. v. Bellsouth Advertising & Publishing Co.*, 825 F. Supp. 1216, 1224 (D.N.J. 1993).

Indeed, the commentary to § 1391 notes: "The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too . . . . even if it is shown that the activities in B were more substantial, or even the most substantial." *Calkins v. Dollarland, Inc*., 117 F. Supp. 2d 421, 426 (D.N.J. 2000)(citing David D. Siegel, Commentary on 1988 and 1990 Revisions of Section 1391, *in* 28 U.S.C.A. § 1391 (West 1993), at 9)).

The fact that Ms. Canca's *final* accommodation request(s) and the actual termination decision were made in New York (which Defendants contend are more relevant to the incidents giving rise to the claims) does not make venue in New Jersey improper. Ms. Canca's diagnosis of a heart condition occurred while she still worked in New Jersey, Ms. Canca underwent heart surgery while employed at the New Jersey facility, Ms. Canca presented medial papers to

11

substantiate the need for leave to New Jersey personnel (Robbinsville's HR team), commenced FMLA leave and returned from FMLA (all while still working in New Jersey), and finally, Ms. Canca interviewed for hire in February 2019 (with New Jersey Robbinsville managers) and was hired for a position at the New Jersey facility[5] – are of which qualify as "substantial events" giving rise to her claims *herein*.   Other facts specific to venue and why Ms. Canca filed her lawsuit in the District of New Jersey include:

> (a) Ms. Canca worked for Defendants for approximately two-thirds (2/3) of her overall entire tenure **in New Jersey** (the Robbinsville location) and her performance in New Jersey will be directly at issue in this suit;

> (b) Although Ms. Canca was terminated from the Staten Island location after 5 months of working there, she was denied a position for which she was to be placed and/or hired **in New Jersey** (the Robbinsville location);

> (c) Ms. Canca should be entitled to avail herself of the laws in the state wherein she was denied a long-term job position under the LAD (discussed more below);

> (d) Defendants systematically transfer employees (supervisory and non-supervisory) to distribution centers in many different states all the time (and operate all throughout the state of New Jersey);

> (e) Ms. Canca resides closer to the Robbinsville location in New Jersey; and

> (f) Witnesses will be helpful and necessary *from both* New Jersey and New York (who are accustomed to traveling for Defendants as part of their business).

*Id.* at ¶ 30.  In *Calkins* 117 F. Supp. at 426,  a New Jersey District Court declined to find improper venue even though only a small fraction of the events giving rise to the plaintiff's LAD claims occurred in New Jersey (and admittedly almost exclusively occurred in Pennsylvania).  The Court in *Calkins* analyzed as follows:

---

[5] *See* Ex. A and Ex. B.

> Defendants argue that no substantial part of the events leading up to this case occurred in New Jersey. In their motion brief, they contend that of Calkins' 46 months of employment with Dollarland, 41 were at Pennsylvania stores, and only the last five were at a store in New Jersey. Additionally, defendants certify that while Witten was Calkins' supervisor when she was transferred to the New Jersey store in April 1998, by June 1998 responsibility for her store had been given to another manager. They also aver that Witten never worked on location at Calkins' New Jersey store, and that Kerdeman "was based at all times" in Philadelphia. Finally, defendants certify that the three witnesses mentioned in Calkins' complaint, as well as Pincus and Mazer--the officials to whom Calkins allegedly reported the harassment--worked exclusively in Pennsylvania. Calkins' description of her term of employment in New Jersey does not substantially differ from that of the defendants.

*Calkin* 117 F.Supp., at 426. However, the plaintiff did work in New Jersey for several months, and some of the acts of harassment occurred at the New Jersey store (albeit less times) as well as in Pennsylvania. *Id.* Therefore, the Court concluded:

> This Court finds that a substantial part of the events giving rise to Calkins' claim arose in New Jersey. This conclusion rests on the broad understanding of "substantial" as reflected in the 1990 amendments to the venue statute and as applied by other courts.

*Id.* Other courts have upheld venue where an illegal action was repeated in more than one state and venue was laid in a state that accounted for only a small number of those actions. *Dorsey v. American Golf Corp.*, 98 F. Supp. 2d 812, 816 (E.D. Mich. 2000) (holding that venue for disability discrimination claim was proper in district of state where only four (4) of 257 defendant golf courses were located); *Gwynn v. Transcor America, Inc.*, 26 F. Supp. 2d 1256, 1261-62 (D. Colo. 1998) (holding that venue § 1983 claim was proper in state that was a minor leg of trip during which prisoner allegedly was continuously assaulted and mistreated).

This Court would have to find that all of Ms. Canca's prior positions, performance, requests for medical leave under the FMLA (also qualifying as requests for accommodations under the LAD/ADA) – in New Jersey, and interviews with the New Jersey management and failure to be

hired in New Jersey -- are insubstantial such that they should not be considered in assessing venue. This is simply not the case.

Ultimately, the burden of establishing improper venue is on the Defendant. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725, 19 V.I. 642 (3d Cir. 1981) ("the defendant should ordinarily bear the burden of showing improper venue"); *see Baptiste v. Tapestry, Inc*., 2018 U.S. Dist. LEXIS 134467, 2018 WL 3772678 (D.N.J. 2018); *see also Reitnour v. Cochran*, 86-4869, 1987 U.S. Dist. LEXIS 3098, 1987 WL 9774, at *1 n.1 (E.D. Pa. 1987) (holding that the defendant, as the movant, bears burden of proving improper venue).

Ms. Canca does not dispute that substantial events giving rise to her claims *also* occurred while she worked at Amazon's Staten Island location.  This includes i.) her requests for accommodations upon her return from FMLA leave, ii.) mistreatment by New York management and HR professionals, iii.) the investigation giving rise to her termination; and iv.) the ultimate termination decision.  Therefore, venue would also be properly laid in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2).

Given that venue is also proper in the Eastern District of New York, Defendants seek transfer.  28 U.S.C. 1404(a) states in pertinent part, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a). However, the party seeking to transfer must show that the alternative venue is not only adequate, but also more convenient than the current one. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995)[emphasis added]; *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 U.S. Dist. LEXIS 87645, Copy. L. Rep. (CCH) P29,656, 2008 WL 4755350 (D.N.J. 2008).

In the Third Circuit, the plaintiff's choice of venue is a "paramount consideration" and should not be lightly disturbed. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S. Ct. 871, 27 L. Ed. 2d 808 (1971). As the moving party in this case, the defendants have the burden of persuasion on their motion to transfer. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). To overcome the presumption in favor of the plaintiff's choice of forum, the defendant must produce "something more than a mere preponderance of the evidence" in favor of transfer. *Kisko v. Penn Central Transp. Co.*, 408 F. Supp. 984, 986 (M.D.Pa. 1976).

Pursuant to § 1404(a), the private interest factors for a Court's consideration include (1) the parties' forum preferences[6]; (2) where the claim arose[7]; (3) convenience of the parties and witnesses; and (4) location of evidence. *See Spack v. Trans World Entm't Corp.*, No. 3:17-cv-2687(BRM)(LHG), 2017 WL 6209218, at *3 (D.N.J. Dec. 8, 2017).

The remaining private interest factors are (3) and (4). While Defendants submit an affidavit outlining that their supporting witnesses (i.e. the managers/HR professionals involved in the latest accommodation requests and termination decision-making process) will be located in Staten Island New York, and their physical documents pertaining to the matter are in New York – these factors are truly neutral. In essence, Defendants contend that the litigation of the matter in New York will be more convenient for *their* witnesses. However:

---

[6] Although Defendants make much of the fact that plaintiff is not a resident of New Jersey – they ignore that she lives 8.6 miles from this District Court and this factor would *still* weigh in her favor. *See Burke v. Quartey*, 969 F. Supp. 921, 929 (D.N.J. 1997)("it is reasonable to assume that this forum is convenient for the plaintiff in light of the regional proximity between his home state, Maryland, and New Jersey. *See Gear v. Constantinescu*, 741 F. Supp. 525, 527 (D.N.J. 1990)(using geographical proximity between fora to measure convenience in forum non conveniens analysis). Therefore, it is also unreasonable to conclude that the plaintiff chose this forum to vex, harass, or oppress the defendant. *See Gulf Oil*, 330 U.S. at 508. Second, New Jersey has a clear interest in hearing this claim, as explained *supra* with respect to minimum contacts, despite that plaintiff is not a New Jersey resident. Thus, plaintiff's choice of forum deserves deference and weighs significantly against dismissal.")(internal citations in original).

[7] Addressed ad nauseam *supra*.

"[a] court will not grant a transfer simply because the transferee court is more convenient for the defendants . . . . If the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed." *Market Transition Facility v. Twena*, 941 F. Supp. 462, 467 (D.N.J. 1996) (quoting *Ballard Medical Products v. Concord Laboratories, Inc.*, 700 F. Supp. 796, 801 (D.Del. 1988)). Defendants reside in Springfield, Pennsylvania, just west of Philadelphia; Calkins lives in Camden County, New Jersey. One side will have to travel farther than the other regardless of the forum, but given the short distance between the two fora, there is only a negligible distance in terms of convenience." *Calkins citing See, e.g., Bevil v. Smit America*, 883 F. Supp. 168, 170 (S.D.Tex. 1995) (denying motion to transfer to courthouse 50 miles away because of minimal inconvenience "in this age of convenient travel, discovery, trial testimony preservation, and communication"); *Market Transition*, 941 F. Supp. at 468 (denying motion to transfer from Newark to Brooklyn); *Standard v. Stoll Packing Corp.*, 210 F. Supp. 749, 750 (M.D.Pa. 1962) (denying motion to transfer, considering the proximity of Pittsburgh and Harrisburg). Moreover, Dollarland maintains a presence in New Jersey, Witten and Kerdeman's jobs have previously brought them to the state, and the defendants do not assert that litigating before this court would impose any physical or financial hardship. The Court also notes, with respect to the interest in compelling attendance of witnesses, that the Philadelphia area is within the Court's subpoena power. *See* Fed. R. Civ. P. 45(b)(2). Finally, defendants have not alleged that they would be unable to receive a fair trial in New Jersey or that any "practical problems" exist that dictate transfer.

*Calkins* 117 F. Supp. 2d at 433. Similarly, the location of documents does not weigh in favor of transfer, given the era in which we live.  The location of physical documents is no longer a factor given great weight in a Section 1404(a) analysis. *See, e.g.,  Oubre v. Clinical Supplies Mgmt., Inc.*, 05 Civ. 2062, 2005 U.S. Dist. LEXIS 28877, 2005 WL 3077654, at *3 (S.D.N.Y. Nov. 17, 2005)  (In today's era of photocopying, fax machines, Federal Express, and electronic document transmission, the location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer.") (quotations omitted); *Lynch v. Nat'l Prescription Adm'rs*, 03 Civ. 1303, 2004 U.S. Dist. LEXIS 3134, 2004 WL 385156, at *3 (S.D.N.Y.  Mar.  1,  2004) ("[T]he location of documents factor  is neutral [in]  today's  era  of photocopying, fax machines and Federal Express.") (quotations omitted).

As to public interest factors,[8] given Ms. Canca's intention to amend the instant suit to include New York State and City law claims under their anti-discrimination statutes, same would impact the analyses in determining whether to transfer venue (including local interests in resolving local controversies and a New York District Court's familiarity with New York's anti-discrimination law(s)(which typically are brought contemporaneously with ADA/FMLA claims in their federal courts). For these reasons, Ms. Canca does not oppose the request to transfer venue of this suit to the Eastern District of New York.

### B. Legal Standard for Assessing Jurisdiction pursuant to 12(b)(2)

A motion to dismiss pursuant to Rule 12(b)(2) challenges the ability of a court to exercise jurisdiction over a party to the dispute. The term "jurisdiction" refers to the power of a court to act and adjudicate concerning the subject matter in a given case. *Noxon Chem. Prods. Co. v. Leckie*, 39 F.2d 318 (3d Cir. 1930). Because federal courts, unlike their state counterparts, are courts of limited jurisdiction, it is incumbent upon the plaintiff to demonstrate that jurisdiction is appropriate. *Tanzymore v. Bethlehem Steel Corp*., 457 F.2d 1320 (3d Cir. 1972). "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) P.S.F.S. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

Once the question of personal jurisdiction has been raised, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992). However, where a court does not hold an evidentiary hearing, the plaintiff needs only to establish a *prima facie* case of personal

---

[8] The public factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara* 55 F.3d at 879.

jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). In such cases, a plaintiff is entitled to have her allegations "taken as true and all factual disputes drawn in [her] favor." *Id.* (quotations omitted).

**i.)     Specific jurisdiction over Amazon Defendants**

Defendants' briefing largely argues no basis for general jurisdiction and lightly touches upon specific jurisdiction.   This is so because Defendants are acutely aware that hiring an employee to work *in New Jersey*, and operating a business *in New Jersey* for their benefit where Ms. Canca spent most of her employment performing services for them at their Robbinsville, New Jersey facility – from October 2016 through September 27, 2018, and who then interviewed to work *back* in New Jersey in February 2019 – would result in them being hailed into Court in this jurisdiction.

Specific jurisdiction is dependent upon the relationship of the litigation to the defendant's contacts with the forum, i.e., the court's focus is on the minimum contacts between the non-resident defendant and the forum. *Eubanks v. Filipovich, Civ*. Action No. 12-4299, 2012 U.S. Dist. LEXIS 182448, 2012 WL 6731123, at *2 (E.D. Pa. Dec. 27, 2012) (*citing Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "'should reasonably anticipate being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co*., 75 F.3d 147, 151 (3d Cir. 1996)(*quoting World—Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). "A single contact [between the non-resident defendant and the forum] may be sufficient where [the non-resident defendant's] connection to the forum is substantial." *Eubanks*, 2012 U.S. Dist. LEXIS 182448, 2012 WL 6731123, at *2. "Simply put, the defendant's contacts with the forum state must be material to the claim. The court may not exercise

personal jurisdiction if the defendant's contacts with the forum are 'too attenuated.'" *Jarzynka v. St. Thomas Univ. Sch. of Law*, 323 F.Supp.2d 660, 663-64 (W.D. Pa. 2004) (quoting *World-Wide Volkswagen*, 444 U.S. at 299).

This fact-intensive inquiry has three parts: first, the defendant must have purposefully directed its activities at the forum; second, the litigation must arise out of or relate to at least one of those activities; finally, if the prior two requirements are satisfied, the court may consider whether the assertion of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor* 496 F.3d at, 317.

Defendants here purposefully directed activities at this forum by setting up shop in Robbinsville, New Jersey – and hiring Ms. Canca to work there. In addition to their Robbinsville location, Defendants have operations all throughout the state of New Jersey, including *but not limited to* Newark, Jersey City, Carteret, Florene, Edison, Bellmawr, Avenel, Elizabeth, and Moonachie (and the list goes on). *See* Exhibit C.[9]  This instant litigation most certainly arises out of Defendants' hiring and employment of Plaintiff *in New Jersey*.  The mere fact that she spent the last several months of her employment at one of their other locations (Staten Island) does not negate that the employment relationship originated in New Jersey, was cultivated in New Jersey, and ignores that Ms. Canca was set to be transferred *back* to work in New Jersey (for which they actively interviewed her and declined to hire her at this New Jersey facility).  Ms. Canca was working out of New Jersey when she first initiated a request for a medical leave of absence (giving rise to protected conduct under the FMLA/ADA and LAD), commenced that leave of absence, and when she returned from that leave of absence (which bears significantly on notice/knowledge of

---

[9]Defendants' public website discloses business operations and hiring of employees at these New Jersey locations at Amazon.com/jobs, Location: New Jersey, available at
https://www.amazon.jobs/en/search?base_query=&loc_query=New+Jersey%2C+United+States&region=New+Jersey&country=USA (last visited August 27, 2019).  Exhibit it C is simply a print out for ease of reference.

Ms. Canca's disabilities).  Ms. Canca's medical accommodations were based upon a request to transfer to work *in* New Jersey (at the same facility she spent the majority of her employment) which would involve discussions with New Jersey management respecting the feasibility thereof, and Ms. Canca's interviews in February 2019 were with New Jersey Managers – who were hiring her to work under their supervision at their Robbinsville, NJ facility.  This is action Defendants specifically took directed at New Jersey and their desire to have her (again) re-join the team at their Robbinsville, NJ location.

The entirety of Defendants' Motion centers on their contention that the "relevant" time period is strictly New York – and asks this Court to ignore half of Ms. Canca's Complaint. Defendants' position on what is "relevant" at this stage - is sheer argument and defies the unrefuted facts & circumstances placing this Defendants within the clear jurisdiction of this Court.  Every case which Defendants cite in support of their position are inapposite: where the plaintiff did not work in New Jersey.  That is simply not the case here.

Given that Ms. Canca can certainly establish the requisite "minimum contacts" (which were neither random, fortuitous or attenuated), the burden shifts to Defendants to demonstrate that litigation would be "'so gravely difficult and inconvenient'" that a defendant would be at a "'severe disadvantage'" by litigating in this form. *See The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 18, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).  They have not done so.  Defendants' write a single passing comment to this Court about why being placed in this forum doesn't comport with traditional notes of "fair play and substantial justice." Def.Brief, at p 13 (¶ 2).  Defendants merely state that they should not be hailed into Court here (a place where they run a large business operation and employ numerous workers just like Ms. Canca) because i.) Ms. Canca herself is a

Pennsylvania resident[10]; and ii.) *arguing* she "worked for Amazon in New York at all relevant times." Def.Brief, at p 13. Ms. Canca is 8.6 miles from this District Court, and the "relevant" time period in this case is Ms. Canca's employment – which commenced in New Jersey, where she cultivated a record of good performance which led to her promotion, was promoted while still working in New Jersey, and where she took a protected medical leave based upon a heart condition which necessitated accommodations, and directly involves her approved transfer/hire back to Defendants' New Jersey location due to her medical needs.

Defendants are also conflating the concepts of personal jurisdiction with proper venue. As discussed *supra* in the area addressing Defendants' alternative request to transfer venue pursuant to 28 U.S.C. 1404(a) - the mere fact that *some* of the witnesses in this case are located in New York does not militate in favor of finding a lack of purposeful availment/minimum contacts.

Plaintiff does not address general jurisdiction, as this Court need not reach this separate issue given that a clear basis for specific jurisdiction exists.

### C.  Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) Should be Denied

At the outset, if this District Court is intent on transferring the matter to the Eastern District of New York, Ms. Canca submits that consideration and rulings on the substantive issues pertaining to application of New Jersey Law and/or New York Law and sufficiency of the pleadings should be made by the transferee court.  *See ML Design Grp., LLC v. Young Mfg. Co*., Civil Action No. 12-5883 (MAS), 2013 U.S. Dist. LEXIS 84393, at *1-2 n.2 (D.N.J. June 17, 2013)(granting Motion to Transfer Venue, "Defendants' contentions regarding this Court's lack of personal jurisdiction over Mr. Young, as well as the substantive portion of the motion to dismiss based upon Rule 12(b)(6), need not be resolved. Defendants are instructed to file appropriate

---

[10] Which has *no* bearing on *their* contacts with the state and purposeful available in operating businesses in New Jersey, hiring employees to work there – for their benefit.

motions upon transfer of this case to the Western District of Kentucky."); *Reckitt Benckiser Pharm., Inc. v. BioDelivery Scis. Int'l, Inc*., Civil Action No. 14-5892 (MAS), 2015 U.S. Dist. LEXIS 94891, at *2 (D.N.J. July 20, 2015)("Because the Court has granted the motion to transfer, it declines to consider Defendants' motion to dismiss"); *J.F. Lomma, Inc. v. Stevenson Crane Servs*., Civil Action No. 10-3496 (SDW), 2011 U.S. Dist. LEXIS 10998, at *16 (D.N.J. Feb. 3, 2011)(in light of the Court's decision to transfer, the Court declines to address the merits of Stevenson's motion to dismiss for lack of personal jurisdiction); *Knierim v. Siemens Corp*., Civil Action No. 06-4935 (SDW), 2008 U.S. Dist. LEXIS 26571, at *66 (D.N.J. Mar. 31, 2008)(as the Court will transfer plaintiffs' claims pursuant to 28 U.S.C. § 1404(a), the Court declines to address defendants' alternative argument that plaintiffs' claim for breach of implied covenant of good faith and fair dealing be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6)); *Rosado v. TAM Lending Ctr., Inc*., No. 18-13430 (RBK/AMD), 2019 U.S. Dist. LEXIS 46906, at *19 (D.N.J. Mar. 21, 2019)(Defendants' motion to transfer venue is granted, and this case shall be transferred under 28 U.S.C. § 1404(a); and having transferred this matter, the Court declines to address the parties' arguments on whether to strike Plaintiff's jury demand, an issue that the transferee court should decid); *CLP Packaging Sols. v. Sports Pouch Bev. Co*., Civil Action No. 07-1532 (SDW), 2008 U.S. Dist. LEXIS 39868, at *13 (D.N.J. May 15, 2008)(in light of the Court's decision to transfer, the Court declines to address the merits of the parties remaining arguments).

If this Court is inclined to address Defendants' current 12(b)(6) arguments notwithstanding transfer, Ms. Canca addresses their generalized arguments that she cannot sustain her claims – *herein*.

### i.)      12(b)(6) Standard of Review

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), a court is required to "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 375 n. 7 (3d Cir. 2002)). In a complaint, a district court is supposed to accept not only all allegations as true but all inferences arising from the allegations as true. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

Since *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the pleading standard has changed slightly. The Third Circuit has revisited the pleading standard since *Twombly* and has determined that "under our reading [of Twombly], the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 233 (internal citations omitted). Put simply, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up as follows: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234 (internal citations removed).

Despite Defendants' suggestion that Plaintiff is required to prove her entire case within her Complaint, the law clearly does not require a plaintiff to do so. Once again, Plaintiff's Complaint

need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff has more than sufficiently pled enough facts which could give rise to an inference that Defendants violated the law.

### ii.) Ms. Canca sets forth more than sufficient facts to statute plausible claims for FMLA, ADA and LAD violations at the Motion to Dismiss Stage

In employment discrimination cases, the Supreme Court of the United States has previously held that a plaintiff **is not required to establish a prima facie case at the pleadings stage**. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)(emphasis added)("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."). While there is some question as to the applicability of *Swierkiewicz* post *Twombly* and *Iqbal, see Fowler*, 578 F.3d at 211-13, the United States Court of Appeals for the Third Circuit has noted that "the quantum of facts that a discrimination complaint should contain" continues to be a question ripe for further development. *See Guirguis v. Movers Specialty Servs.*, 346 F. App'x 774, 776 n.6 (3d Cir. 2009). A District of New Jersey Court has stated, "[r]econciling *Swierkiewicz, Twombly*, and *Iqbal*, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Huggard v. Crown Bank*, 2012 U.S. Dist. LEXIS 20501 *11 (D.N.J. Feb. 17, 2012); *Barbosa v. Continuum Health Partners Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010).

Notwithstanding the foregoing, Defendants very generally contend that Ms. Canca has not alleged sufficient facts to create a casual link between her protected activity and her termination. <u>Defendants do not address the FMLA interference claim at all, nor do they address the discrimination and retaliation claims separately (despite that the elements at issue for these different claims are not the same)</u>.

> **a.)    Ms. Canca sets forth sufficient facts to establish her FMLA Interference Claim**

Ms. Canca respectfully submits that any argument by Defendants on the FMLA interference claim is waived, as they do not even mention this particular claim in their Brief/Motion.  Ms. Canca very clearly plead a claim for FMLA Interference within Count I of her Complaint. (Ex. A at p. 9: Count I).

The FMLA protects an employee's right to family and medical leave from her job. See, 29 U.S.C. § 2612. Under the FMLA, is "unlawful for any employer to interfere with, restrain, or deny the exercise of the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1); *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004); *Matthews v. New Jersey Inst. Of Tech*., 772 F. Supp. 2d 647, 657 (D.N.J. 2011). FMLA Interference claims are derived from 29 U.S.C. § 2615(a)(1), which provides:

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

An interference claim is "based on the prescriptive sections of the FMLA which create substantive rights for eligible employees." *Parker v. Hahnemann Univ. Hosp*., 234 F.Supp.2d 478, 484 (D.N.J. 2002) (citing *Hodgens v. General Dynamics Corp*., 144 F.3d 151, 159 (1st Cir. 1998)). The FMLA grants eligible employees the right to twelve weeks of unpaid leave per year because of a serious health condition, a need to care for a close family member with a serious health condition, or a birth of a child. *See*, 29 U.S.C. 2612(a)(1). After a qualified absence, employees are entitled to return to the same position or to an equivalent position. See, 29 U.S.C. 2614(a)(1).

To establish an FMLA interference claim, a plaintiff must demonstrate the following elements: (1) she was an eligible employee under the FMLA; (2) defendant was an employer subject to the requirements of the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to

defendant of her intention to take FMLA leave; and (5) defendant denied her the benefits to which she was entitled under the FMLA. *See*, *Parker*, 234 F. Supp. 2d 478, 484.  The action is not about discrimination; it is about whether the employer provided its employees the entitlements guaranteed by the FMLA. *Parker* 234 F. Supp. 2d at 485.

Defendants do not contest any of the above elements.  They cannot contest that Ms. Canca readily sustains elements one (1) through three (3) as she sufficiently plead that she was a full-time employee, working for more than one (1) year and within a location that employed at least 50 employees within 75 miles (at either the Robbinsville or Staten Island locations).  Ex A., at ¶ 38; *and see* Exhibit B (attaching a copy of the FMLA designation form for her leave of absence from August 28, 2018 through September 10, 2018)(a document referenced within the Complaint).

Defendants cannot disclaim notice, as Ms. Canca plead that "[u]pon placement at the Staten Island location, [she]  kept all relevant management apprised of her health conditions. In or about August of 2018, [Ms. Canca] required a surgical procedure. Between August 2018 through her ultimate termination from employment in March of 2019, [she] sought and used various medical accommodations such as: (1) intermittent time off from work for medical reasons; (2) breaks as needed; and (3) outlining her lifting restrictions of over 40 lbs to Defendants' management. And she had discussed other issues with Defendants' management such as travel to and from work (1 reason for her later transfer request back to New Jersey) and scheduling." Ex A, at ¶ 24.

Ms. Canca had not exhausted her twelve (12) week leave entitlement, and Defendants committed *various* interference violations by:  (a) Defendants' failures to properly designate FMLA, failure to provide proper information and notices and to follow FMLA regulations; (b) Defendants' attempts and actions to dissuade use of FMLA rights and privileges[11]; (c) Defendants'

---

[11] The scope of what constitutes interference is described in the applicable regulations as follows: "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, *but*

mistreatment of Plaintiff for her exercise and/or attempted exercise of her FMLA rights; and (d) for terminating Plaintiff because of and following the functional exercise of her FMLA rights and to prevent Plaintiff from further exercising her FMLA rights. Ex. A, at ¶ 40.

Based upon the facts alleged in the Complaint, Ms. Canca has alleged that she put Defendants on FMLA qualifying leave needs even after she returned to the Staten Island facility and was both denied leave (when Defendants declined to notify of her of statutory rights to intermittent leave/reduced work schedule) and their termination of her employment in an effort to prevent from exercising any further leave entitlements. It is an interference violation to terminate an employee for requesting FMLA leave. *See Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 509 (3d Cir. 2009) (holding that terminating an employee for requesting FMLA leave in the future constitutes both interference and retaliation violations of the FMLA). *See also* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of ... any right provided under this subchapter."); *see Butler v. IntraCare Hosp. North,* No. H-05-2854, 2006 WL 2868942, at *5 (S.D. Tex. 2006)(holding that employer's termination of employee after employee requested FMLA leave in the future was manipulation that sufficiently supported an FMLA interference claim).

---

*discouraging an employee from using such leave."* 29 C.F.R. § 825.220(b) (emphasis added). Neither the statute nor the implementing regulations define what it means to be "discouraged" from exercising rights under the FMLA, however, several district courts have considered the issue. The applicable Department of Labor regulations broaden interference claims to encompass employers who discourage employees from using FMLA leave, in addition to those employers who impede benefits. *See* 29 C.F.R. § 825.220(b).To show an employer discouraged an employee from taking FMLA leave, an employee must show the employer took some affirmative step. *See Hilborn v. Cordaro,* 2007 WL 2903453 (M.D.Pa. Sept. 28, 2007). Affirmative acts which have been deemed discouragement include pressuring an employee to take leave at another time, *see Williams v. Shenango, Inc.,* 986 F.Supp. 309, 313 (W.D.Pa.1997), and proposing an employee work from home instead of taking FMLA leave, *see Butler v. IntraCare Hosp. N.,* 2006 WL 2868942, at *4 (N.D.Tex. Oct. 4, 2006); *see also Shtab v. Greate Bay Hotel & Casino, Inc.,* 173 F.Supp.2d 255, 268 (D.N.J.2001) (finding employer's request that plaintiff delay FMLA leave until after busy holiday weekend sufficient to permit reasonable person to conclude that employee's rights under FMLA were chilled).

**b.)  Ms. Canca sets forth sufficient facts to establish her Retaliation Claims (under the FMLA/ADA and LAD)**

"'To assert a retaliation claim, a plaintiff must demonstrate that: (1) he or she is protected under the FMLA[12], (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her FMLA rights.'" *Erdman* 582 F.3d at 508 (internal quotations omitted).

Defendants *solely* contest Ms. Canca's ability to demonstrate a causal link.  Ms. Canca has three (3) forms of evidence to sustain the requisite causal link – 1.) timing; 2.) evidence of intervening antagonism, and 3.) evidence of pretext.

A causal connection can be demonstrated through direct evidence or circumstantial evidence. *See Trujillo-Cummings v. Public Serv. Co.,* 173 F.3d 864 (10th Cir. 1999). Some plaintiffs establish causation with (1) temporal proximity; (2) a pattern of antagonism following the protected activity; or (3) by showing that the reason for his or her alleged adverse action is pretextual.

Ms. Canca plead that once she was placed at the Staten Island location (which did not occur until September 27, 2018), and through her separation from employment until March 5, 2019, she was engaging in protected activity including (1) intermittent time off from work for medical reasons; (2) breaks as needed; (3) outlining her lifting restrictions to Defendants' management; and (4) discussing as travel to and from work (1 reason for her later transfer request back to New Jersey.

Ms. Canca's most recent protected activity was in February of 2019 (i.e. right before she was terminated) when she explained to her managers that she was seeking a transfer to Robbinsville, NJ because her physicians were closer to that location, the distance to Staten Island was

---

[12] Defendants do not dispute that Ms. Canca engaged in protected activity under the FMLA/ADA nor the LAD, and not distinguish between Ms. Canca's protected activity under each statute in their analysis.  This is likely because FMLA-qualifying requests for leave can also constitute reasons for reasonable accommodations.

exacerbating her health and it would be medically beneficial to return to New Jersey.  Ex A, at ¶ 28.  Temporal proximity is measured from the most recent protected activity before the adverse action. *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 (3d Cir. 2016). Therefore, Ms. Canca was terminated within *less than one month* of her most recent protected conduct, which is more than sufficient to establish a prima facie case and evidence to demonstrate a causal link.

In the Third Circuit, an inference of retaliation exists when an employee is terminated shortly after engaging in protected activity.[13] *See Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005) (reversing district court grant of summary judgment because court failed to consider inference created by adverse action within less than three months following engagement in protected activity); *See also Nesselrotte v. Allegheny Energy, Inc*., WL 703395 (W.D. Pa. 2009)(less than 3 months between protected activity and termination sufficiently established causation element); *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1240 (10th Cir.2004)(concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to establish causation); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987)(holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment); *Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y.2005)("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Richard v. Cingular Wireless LLC,* 233 Fed.Appx. 334, 338 (5th Cir.2007) (concluding that two and one half months is a short enough time period to support an inference of a causal link); *King v. Rumsfeld,* 328 F.3d 145 (4th Cir. 2003)(2.5 months held to establish a *prima facie* case of retaliation).

---

[13] *See Robinson v. S.E. Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993) (temporal proximity creates an inference of retaliation when the timeframe is "unusually suggestive.").

In addition to timing, the existence of a pattern of antagonism directed against an employee following his/her participation in protected activities can suffice to create an inference that an adverse action had a causal link to the employee's protected activity. *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920-921 (3d Cir.1997)). Ms. Canca specifically alleged in her Complaint that she was subject to antagonism following notice of her ongoing health condition and need for accommodations.  In particular, she alleged that "Defendants' management was antagonistic about Plaintiff's health and expressed medical needs. Her management (primarily Colvin) was unsympathetic when she discussed her health, was dismissive, and Defendants' Human Resources personnel was blatantly discriminatory. In particular, Derrik Atkinson (Sr. Human Resources Manager), an approximate 3-year employee of Defendants, expressed he did not think Plaintiff would be able to perform her job in light of her health conditions (in a discussion about scheduling)." Ex A, at ¶ 25.

Finally, Ms. Canca presents evidence of pretext which Courts consider in evaluating causation. Despite Defendants' contentions that Ms. Canca concedes there was some type of "intervening event" and she admittedly committed misconduct related to timekeeping – this flies in the face of her Complaint.  Ms. Canca alleged that the purported reasons for her separation were completely fabricated. Ex. A at 29.  In support thereof, she points to numerous examples that demonstrate this termination was a pretext for illegal retaliation/discrimination:

Plaintiff was terminated on or about March 5, 2019. The rationale given to Plaintiff for her termination was that she sought compensation outside of normal business hours – or in other words – performed work for Defendants *before or after work or over a weekend*. Ex. A, at ¶ 31.  Plaintiff was paid hourly. Plaintiff freely acknowledges she submitted time worked during and outside of her regularly scheduled work shifts (although it was very insignificant). Part of Plaintiff's job

duties **required** her to shop for food, pastries, decorations, balloons, and other products for parties, events, meetings, and other occasions. *Id.* at 32. There are at least **8** separate reasons why Plaintiff's termination was for objectively false, made-up and pretextual reasons as follows:

(1) Management who were aware of Plaintiff's health conditions, requested accommodations, and concerns of mistreatment were involved in Plaintiff's termination. Atkinson, a Senior HR Manager had previously referenced Plaintiff's medical conditions as a "barrier" to her work, and HR was involved in Plaintiff's termination.

(2) Plaintiff had been an otherwise stellar employee for years without prior progressive discipline or warning for any such related or unrelated alleged misconduct;

(3) Plaintiff was well received by New Jersey management who was welcoming the opportunity to have her as a supervisory figure back in Robbinsville because of her organization, skills, and work ethic (if not terminated);

(4) Plaintiff was terminated for identifying **some** minimal work hours outside of normally scheduled hours which was exceedingly *de minimis* and comprised very few hours over many months of time;

(5) Plaintiff had submitted time logs of hours worked in the same manner prior to extensive discussions of her health or accommodation needs, and she was **never once** informed of any purported concerns;

(6) Had Plaintiff ever once been warned not to submit any further time for or work outside of regular business hours, she would not have done so. Yet, all of her time had been **approved** by Defendants' *own* management;

(7) Plaintiff was terminated for identifying some sporadic shopping hours in various months when directed to assist with events, but she possesses texts and other materials demonstrating while doing the very shopping **she was communicating with Defendants' own management and human resources personnel** (*who were even making requests of her*); and

(8) Everyone knew Plaintiff performed miscellaneous shopping on an infrequent basis when asked to assist with events because Defendants' own loss prevention personnel (in charge of ensuring no theft or improper off-the-clock work) assisted with carrying such materials into work from Plaintiff's vehicle (demonstrated in photos, separate and apart from texts and e-mails showing supervisory staff knew Plaintiff had to occasionally shop for events outside of work hours).

*Id.* at ¶ 34.   Therefore, no possible factfinder (judge or jury) would ever believe there was a plausible or legitimate reason for Plaintiff's termination from employment by Defendants.

In sum, Ms. Canca has plead more that sufficient facts to demonstrate a casual link between her protected conduct and her ultimate termination – including timing, antagonism and sufficient evidence of pretext. Notably, Defendants cite three (3) district court opinions on page 21 of their briefing arguing other cases where a court dismissed retaliation claims on a 12(b)(6) Motion – two of which are where the Plaintiff proceeded *in forma pauperis* and were given leave to amend (*Jihad* and *Burns*), and one where the plaintiff's protected conduct was <u>a year and five (5) months</u> before his adverse action, with no other facts plead to suggest a causal link (*Kirman*). To  put it mildly, those cases have no comparison to the instant pleading, which is well pleaded and more than satisfies the 12(b)(6) standard for proceeding.

### c.)   Ms. Canca sets forth sufficient facts to proceed with her disability discrimination claims under the ADA/LAD

In order to make out a *prima facie* case of discrimination under the ADA (and LAD[14]), thereby satisfying the first prong of the *McDonnell Douglas* burden-shifting paradigm, a plaintiff must be able to establish that she: (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of that disability. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (*citing Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

Defendants do not contest any of the foregoing elements, but rather, that Ms. Canca cannot demonstrate a casual link between her disabilities and her separation.  However, Defendants do

---

[14] New Jersey Courts typically analyze NJLAD claims under the familiar *McDonnell Douglas* burden-shifting analysis and mirroring federal law. *See Ensslin v. Twp. Of N. Bergen*, 275 N.J. Super. 352, 364, 646 A.2d 452 (App.Div.1994) (noting appropriateness of construing a state regulation based on federal law due to the correlation between state and federal law on disability discrimination), *certif. denied*, 142 N.J. 446, 663 A.2d 1354 (1995). The New Jersey Supreme Court has observed that the Legislature has not "amended the LAD to afford rights to the disabled that are different from .. . . . . the ADA. . . ." *Victor v. State*, 203 N.J. 383, 406, 4 A.3d 126 (2010); *see also Chisolm v. McManimon*, 275 F.3d 315, 324-25 n.9 (3d Cir.2001) (analyzing an ADA claim "with the understanding that the principles will apply equally to the [LAD] claims").

not mention a material averment in Ms. Canca's complaint *wherein* she has <u>direct evidence</u> that Defendants' Senior Human Resources Manager (Derrick Atkinson) specifically told her that "he did not think that Plaintiff would be able to perform her job in light of her heath conditions." Ex A, at ¶ 25.  These facts, accepted as true – would negate the need for assessing Ms. Canca's claims under a burden shifting frame work for discrimination, and would allow a fact finder to conclude it was her disability which caused Defendants to sever the employment relationship.[15]

In addition to this direct evidence – Ms. Canca also relies on the circumstance evidence cited *supra*, including evidence the timing between notice of her notice of her health conditions (and need for accommodations) to Staten Island management, the evidence of antagonism she endured in connection therewith, and the pretextual nature of her termination – as evidence of "circumstances giving rise to an inference of discrimination," which is what is required at the *prima facie* stage.

Ultimately, the issue on a Rule 12(b)(6) motion is not whether a plaintiff eventually will prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). "Dismissal under Rule 12(b)(6) . . . is limited to those instances where it is certain that no relief could be granted under *any* set of facts that could be proved." *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (emphasis added).

### d.) Defendants' Arguments that Ms. Canca is not entitled to relief under the LAD are simply not accurate

As to Ms. Canca's LAD claims, and without bearing repetition from previous sections in

---

[15]   Direct evidence is overt or explicit evidence which directly reflects discriminatory bias by a decision maker. *Armbruster v. Unisys Corp*., 32 F.3d 768, 778-79, 782 (3d Cir. 1994)(analogizing direct evidence to the proverbial "smoking gun"). Indirect evidence is evidence of actions or statements from which one may reasonably infer discrimination. *Torre v. Casio, Inc*., 42 F.3d 825, 829 (3d Cir. 1994).

this briefing, Ms. Canca was hired to work in New Jersey, spent a majority of her employment there, interviewed with New Jersey Management for a position in New Jersey immediately preceding her termination, was granted and was awaiting transfer back to New Jersey – but she was not hired for the Robbinsville, NJ site.  Defendants' *argument* about what they deem to be the "relevant period" giving rise to these LAD claims ignores nearly the majority of Plaintiff's employment with Defendants -- and the clear facts alleged in the Complaint surrounding Robbinsville, New Jersey.  The cases cited by Defendants are completely inapposite and involve plaintiffs who admittedly didn't work in New Jersey – nor any cases where a plaintiff had alleged failure to hire *in New Jersey*.

The NJLAD was enacted in 1945 with the goal of "nothing less than the eradication of the cancer of discrimination." *McKenna v. Pacific Rail Serv*., 32 F.3d 820, 840 (3d Cir. 1994) (citing *Lehmann v. Toys "R" Us, Inc*., 132 N.J. 587, 600, 626 A.2d 445 (1993)). For New Jersey "substantive law to be [applied] in a constitutionally permissible manner, [New Jersey] must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Blakey v. Continental Airlines*, Inc., 164 N.J. 38, 65, 751 A.2d 538 (2000) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981)); *see also D'Agostino v. Johnson & Johnson, Inc*., 133 N.J. 516, 539, 628 A.2d 305 (1993).

Mere, "occasional contact with New Jersey as part of [a plaintiff's] employment [i]s insufficient to turn those visits into plaintiffs being 'based' in New Jersey for employment purposes." *Norenius v. Multaler*, Inc., 2008 N.J. Super. Unpub. LEXIS 2923 (App. Div. 2008) (quoting *Buccilli*, 283 N.J. Super. at 10-11). As the Court in *Satz v. Taipina* explained,

> New Jersey courts have found that it is unfair to subject an employer to different
> legal requirements if its employees reside in different states. *Buccilli v. Timby*,

*Brown & Timby*, 283 N.J. Super. 6, 11, 660 A.2d 1261 (App. Div. 1995) (citing cases). Employment cases which straddle state lines can involve several different states, including the state of the employee's residence, the state where the employee works, the state where the employer's headquarters is located, the state where the employer does business, and the state where the alleged discrimination occurred. Generally, though, regardless of the number of states involved, New Jersey courts have applied the law of the state where the employee works to claims of workplace discrimination.

2003 U.S. Dist. LEXIS 27237 (D.N.J. Apr. 15, 2003), aff'd, 122 Fed. Appx. 598 (3d Cir. N.J. 2005) (emphasis added). In short, although a number of factors are considered to determine which state's law applies, the most critical factor is the location where the employee works. *See id*.

Courts have considered similar arguments made by the Defendants *herein* and rejected same.  In a case where the Defendants were a New York based corporation, with its head quarters in New Jersey, the decision to terminate was made in New York, and after Plaintiff's return from medical leave, she would have been reinstated to a position in New York - the LAD still applied. *Schneider v. Sumitomo Corp. of Am*., Civil Action No. 09-5094 (DMC) (MF), 2010 U.S. Dist. LEXIS 59101, at *12 (D.N.J. June 14, 2010)(Plaintiff's employment in New Jersey permits her to file her employment discrimination claims under the NJLAD; "Plaintiff worked at Defendant's New Jersey location for 16 years prior to her discharge [, and] [t]his is not a case were an employee simply did a portion of her work in New Jersey.").   As the Satz Court explained, "regardless of the number of states involved, New Jersey courts have applied the law of the state where the employee works to claims of workplace discrimination" 2003 U.S. Dist. LEXIS 27237, at *50; *see*, *e.g., Buccilli*, 660 A.2d at 1263; Satz, 2003 U.S. Dist. LEXIS 27237, at *46-47; *Brunner v. AlliedSignal, Inc*., 198 F.R.D. 612, 613-14 (D.N.J. 2001); *McDonnell*, 319 N.J. Super. at 340-41, 725 A.2d 126 (App. Div. 1999)  (finding that where a New Jersey resident worked for the state of Illinois in an office in New Jersey, New Jersey law applied).

This Court would have to engage in a choice of law analysis as to whether Ms. Canca's

wrongful termination claims are governed by the NJLAD (within the contours of the caselaw above) or New York laws prohibiting discrimination (caselaw regarding the appropriate inquiry – *infra*).

Ms. Canca intends to amend the instant Complaint to add claims for violations of New York (state and city) Human Rights laws for the discrimination and retaliation violations pertaining only to the termination. Under New York Law, a plaintiff can state a discrimination claim if he worked in New York at the time he suffered the "impact" of discrimination. *See Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289-91, 933 N.E.2d 744, 907 N.Y.S.2d 145 (2010) (explicitly rejecting plaintiff's argument that he could allege a NYCHRL claim merely because the "decision to terminate" took place in New York City). For alleged discriminatory acts occurring "outside New York City, the relevant location of the injury for purposes of the impact analysis is . . . the [p]laintiff's place of employment." *Robles v. Cox & Co*., 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012).

"Although Plaintiff alleges age discrimination under New York and New Jersey law, he cannot prevail on both New Jersey and New York [age] discrimination claims." *Marinac v. Mondelez Int'l, Inc*., No. 2:14-7606-WJM-MF, 2019 U.S. Dist. LEXIS 117743, at *6 (D.N.J. July 12, 2019).

As to the failure to promote claim, Defendants have cited no case law that a person who pursues a failure to hire claim for a position in New Jersey, with a New Jersey based location, is not permitted to pursue claims under the LAD.

**IV.   CONCLUSION**

Ms. Canca concedes that jurisdiction is proper either in this District Court or within the Eastern District of New York.  Therefore, she does not oppose Defendants' request to transfer

venue.  In the event this Court is inclined to transfer, Ms. Canca respectfully requests that this

Court defer ruling on any remaining issue to the transferee Court.  If this Court is not so inclined,

however, Ms. Canca sets forth ample evidence that her LAD/ADA/FMLA claims are more than

sufficient to satisfy the 12(b)(6) standard and Defendants' Motion in this regard should be denied.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke* _____
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Square; Ste. 128
Bensalem, PA 19020
Attorney for Plaintiff

Date: September 3, 2019

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOGA CANCA | : |
| | : |
| Plaintiff, | : |
| | :    No.: 19-12318 |
| v. | : |
| | : |
| AMAZON.COM, INC. | : |
|    and | : |
| AMAZON.COM. DEDC, LLC. | : |
| | : |
| Defendants. | : |
| | : |

## <u>CERTIFICATION OF SERVICE</u>

I certify on the date set forth below that I served Defendant with a copy of Plaintiff's Response Brief to Defendants' Motion to Transfer Venue/Partial Motion to Dismiss at the following address via ECF:

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*
Christine E. Burke, Esq.
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square; Ste. 128
Bensalem, PA 19020
Attorney for Plaintiff

Dated: September 3, 2019

38